Okay, the next argued case is number 16. 1531, Evade, LLC v. Under Armour, Inc. Mr. Welch. Thank you, Your Honor. Good morning. As you know, this appeal involves three trademarks. The first two are registered, Evade, Offshore Armour, in stylized form, where the word evade is 10 times bigger than offshore armour. The second mark is Evade, Offshore Armour, in standard form, and the third is an applied form mark, Evade, Outdoor Armour, in standard character form. And as you also know, this appeal arises out of a consolidated opposition cancellation proceeding before the TTAB, and the board faced the question of whether these three marks, or any of them, are likely to cause confusion with the marks pleaded by Under Armour. The board ruled in favor of Under Armour on the two standard character marks both parties appealed. Of course, in the proceedings below, Under Armour bore the burden of proof because it was a plaintiff in both proceedings. Can I ask you a very specific question? It's my understanding that you disclaimed the word outdoor, not offshore, try and keep it all straight, but outdoor. I didn't see you really give any sort of differing treatment then in the briefs to the similarity or the respective weakness or strength or anything else. What impact do you think your disclaimer of one of your three words has on the DuPont factors and the likelihood of confusion? Well, it certainly weakens that portion of the mark, but nonetheless, the board and the board, does it allow us to say it's now a two-word mark instead of a three-word mark? No, of course not. The test has to be applied to the marks as a whole. That word doesn't disappear. In fact, the use of the phrase outdoor armour and offshore armour, we submit, makes the word armour even more suggestive because the modifiers make it sound like you're talking about either protective clothing or clothing that's durable or strong. So, isolating the word armour by itself, isolating the word outdoor by itself. That's not the test. But the disclaimer has to mean something. I'm sorry? The disclaimer has to mean something. To the public, it doesn't mean anything. The public doesn't know these words are disclaimed. I think Judge O'Malley's question is the same one I still have and don't really fully understand your answer, which is you disclaimed the word outdoor. How ought I to factor that in or how should the board factor that in when it was I think I have two answers to that. One, the consuming public, they don't know it's disclaimed, right? What it does, it says, well, maybe the word outdoor doesn't count so much when you're comparing the three marks. That's all it means. I don't think it gets anybody off the hook in trying to prove what the ordinary consumer thinks of when he sees this. Okay, this is a really stupid question, so I hope that you're not offended. But what does it mean when you say we disclaim it? Doesn't it mean that you're pretty much saying, okay, listen, we understand this is a descriptor, a normal, everyday descriptor? What does it mean? It means you don't claim any right in that mark by itself apart from the mark as shown. That's what the disclaimer language is in the statute. It's a way to get it registered. It's a way to get the examiner off your back. But it doesn't affect... If he or she is nipping at you about the fact that it's a descriptor. Right. Okay. You say, okay, we'll just claim outdoor. We're not claiming the word outdoor. We don't claim any rights to the outdoor by itself, but that doesn't remove it from the mark. In fact, the disclaimer section of the statute says it doesn't affect the mark as a whole. Now, why did my predecessor disclaim the one and not the other? That I can't answer. I was completely bewildered by. I clearly don't understand the case. That's the way the case came to me, Your Honor. We submit in our brief that the board erred in its likelihood of confusion analysis. First, because it didn't consider at all the sound of the marks, how they sounded. It never even mentioned the sound of the marks. It talked about the appearance of the marks, but not completely and not with a full understanding of how you compare standard character marks. We believe under the sixth DuPont factor, it didn't consider strongly enough the descriptiveness, or I shouldn't say descriptiveness, the high suggestiveness of the word armor. We're talking about similar goods, right? Use on similar goods. You didn't proper any indication of registrations involving the same words on other similar goods, right? We've got two head-to-head competitors for the same products. You think they're different marks, but we are not talking about this is used all the time. Well, I want to make one distinction. The board looked at the third-party registration evidence and the third-party use evidence and said, well, this is irrelevant because it's not in the same field. It's not in the field of ordinary clothing, but that isn't why it was cited. We cited those registrations to show how ubiquitous the word armor is and how common it is and the public understands what armor means. But there's evidence of it being used on similar goods. But that doesn't erase it from the minds of people. I mean, a consumer who sees armor on screen protectors, on floor polish, on protective clothing doesn't walk into a clothing store and say, gee, I don't know what armor means anymore. It's not in those other fields. I don't know what it means. It doesn't erase the word armor from the minds of consumers. They know what it means. It's a common word. And so to say, well, it's not used on clothing, so you can't consider it suscriptive, that makes no sense. Because you have to look at it from the view of the consumer. And the consumer is well aware of the word armor. It's aware of it in all kinds of fields. And just because it isn't used in this field, thanks to armor's policing policies, doesn't mean it's wiped out of the minds of consumers. But once it's used in the same field, that's important for purposes of determining whether there's a likelihood of confusion. Well, then you get into the juice generation case, and then you start talking about customers being able to distinguish marks in the field by small variations because other people are using armor. We're not arguing that. We're arguing the descriptiveness slash suggestiveness, laudatory nature of the word armor, which is not erased from the minds of consumers when they look at clothing. It's the same word that they see with all these other protective products. That's our argument. So I assume there's a separate registration for evade without the outdoor armor. Right. There is a register. And that this registration is in block letters. It's not limited to the design. That's correct. For evade. It's practically the same word for the same goods. How does one avoid confusion? That's our registration. I'm sorry. I misunderstood the question. Evade has the word evade registered for clothing by itself. So you're the source in both sets of goods, so there could be no confusion because you're the same source. Exactly. That's your argument. And what the board said, they took that word evade and said, well, evade has just added its housemark to the word armor, and then it cited a few of these housemark cases. But the housemark cases are all over the lot. Some find confusion, some don't. And what that did, what the board did there is it avoided applying the DuPont factors, the first DuPont factor, sound meaning, connotation, commercial impression, and it took this shortcut, arguing these housemark cases, to come to its conclusion. How long had the evade mark been used before you tried to join it with armor? I think they all started in 2009, all at the same time. All the evade marks? Right. So you separately use evade in connection with clothing? Correct. And I'm not sure that's in the record now. The evade registration is cited in our brief, but we didn't put any evidence of using the word evade by itself. But you're telling me now that you do use it by itself for clothing? Allow me to tell you that. I guess I'm telling you that. I just wanted to point out, your honors are well aware of the Hopeville Hills case last year, where the CFC found two marks, not confusable, Mayari and Maya, for wine. And the court said one factor alone can be dispositive, one DuPont factor, particularly where it's the dissimilarity of the marks. The main discussion I wanted to have today was about the strength of the word armor. We submitted our briefs, and I think our evidence shows that the word armor has very little conceptual strength, and the record evidence doesn't show any marketplace strength for the word armor. As for the conceptual evidence, I spoke about it a little bit. Different dictionary definitions, third-party uses, third-party registrations, disclaimers of the word armor. I think all leaving little doubt that the word armor is highly suggestive. And we submit it remains suggestive, even in the clothing field, even though these third-party registrations aren't in the clothing field, because the consumer still has this word in his or her head. As to marketplace strength, as we pointed out in the brief, Under Armour hasn't proven anything about actual consumer perception of the two marks or the word armor by itself. There's no proof of use or sales of the word armor by itself to any extent. There's no numbers. There's no proof of promotional expenditures of the word armor. In fact, Under Armour hasn't been able to segregate its advertising or sales by any of its marks, and it owns dozens of marks that don't even include the word armor. And finally, they have no survey evidence regarding the strength of the word armor. So lacking any concrete evidence, they fall back on an argument about policing, that they policed the heck out of this mark. Well, that's all well and good, but it still doesn't erase the word armor from the consumer's mind. What the policing shows is other entities don't want to go up against Under Armour because it's a big company and it's very expensive to fight. They have some testimony. Under your theory, though, you would have us say that use of armor is never meaningful. And therefore, wouldn't that wipe out virtually all of Under Armour's marks? Oh, no. I'm not saying that at all. I'm saying that it's a suggestive mark. You have to look at the marks as a whole. Evade Under Armour has one word that is arbitrary. That's the word evade. That's the key word in Evade's marks. And that's where the board missed the boat. Well, you don't think use of the word armor as it relates to clothing is somewhat arbitrary? I mean, think about it. When you think of armor, wearing it, other than... It's metal clothing. Come on. I'm asking the question. Sure. Sorry. Right. When you think of armor wearing it, you would normally think of wearing metal armor. Well, I think it also has the connotation of the clothing being strong. It's puffery. It's puffery. People aren't telling you that our clothing is strong. It's long lasting. It's like armor. Right. And if the reason that they have that perception is because Under Armour started using it for that purpose, then it doesn't make it completely a word that you can co-opt, right? I don't think we're co-opting it. And secondly, they haven't proven the strength of the word armor. It's their burden to prove. Under Armour also cites to some internal... When you say they didn't prove the strength, is it because the board itself said it's somewhat suggestive and there was no marketplace evidence? Right. For this one. I mean, there's lots of marketplace evidence for Under Armour that they submitted. Under Armour, but not just the word armor by itself. There's no marketplace evidence for the word armor by itself. Okay. They talk about an internal... One of their own employees testified that armor is important. To what extent is the fact that they diligently, in fact, doggedly protect? To what evidence does that... To what extent... I mean, are there TTAP cases? I mean, certainly they're none of our cases, but are there TTAP cases or other cases that indicate that that level of protection imbues strength to an otherwise suggestive mark? I would say no. Doesn't it go to exclusivity of use? Pardon me? Look, I could have a mark XYZ for clothing. I'm the only one who uses it, but I have very little sales and nobody ever heard about it. So what does exclusivity mean? Well, but it's one of the factors we're supposed to consider, right? Yeah. Well, but it has to be coupled with consumer perception. I mean, having an... When you say it has to be coupled, I guess that's what I'm misunderstanding. Is the strength of the mark argument only fame or is it distinctiveness? It's distinctiveness. It's not just fame. But do you see that those are two different concepts, right? You can have a famous mark that is not distinctive, and you can have a distinctive mark that's not famous. The board said... So how do you weigh strength? Nobody's debating that armor is not a famous mark. So armor's not famous and... The question is, what marketplace strength does it have? And they haven't proven any. Well, but that's why I asked you, is this a question of distinctiveness? Because distinctiveness can... If being distinctive makes you a strong mark, regardless of marketplace presence, that's what I'm asking. That's not right. Being distinctiveness might give you some conceptual strength, which we argue they don't have anyway because armor is suggestive. But it certainly doesn't give you any marketplace strength. You have to use it. People have to see it. People have to recognize it. And they don't have that proof. All right. I have nine seconds left, so I guess I'll just stop talking. Thank you. Yes, let's hear from the other side. Ms. Lindquist. May it please the court. The board's analysis of the standard character marks and their conclusion that those marks conflict with Under Armour's armor mark is absolutely correct. OK, well, let's just start. Let's start where he left off, just since it's fresh in our minds. Armor was not found by the board to be famous as a mark. That's correct. Armor was found by the board to be slightly suggestive. Slightly suggestive, yes. Right, but that means it's not distinctive and it's slightly suggestive. Suggestive marks are distinctive. OK, you're right. Descriptive is fine. Yeah, OK. So slightly suggestive. And then there is no evidence of marketplace strength of armor in this record. Sorry. In this record. The board didn't. OK, the board made no fact finding. How about this? This you'll agree with. The board made no fact finding that armor alone has marketplace strength. That is correct. OK, so you're saying there might be evidence. But the board didn't make a fact finding on that. I can't make a fact finding in the first instance on that. That is correct. The board did not make a fact finding about marketplace. I figured we could get to an agreement on that. So what is the basis for the claim that this is then a strong mark? And what is the standard for this fifth DuPont factor? That's why I was trying to get at your opposing counsel about, does this go to fame? Does it go to distinctiveness? Does it go to marketplace? You know, I am not positive I understand. And we don't get a gazillion trademark cases. But I'm not positive I understand what this fifth factor is really supposed to be measuring. And then tell me, in light of all those facts that you and I did just agree on, where you get the basis for substantial evidence to support a fact finding of strength. OK, so there are two parts to strength. There's conceptual strength. And there's marketplace strength. And a conceptually strong mark can be a slightly suggestive mark. And in juice generation, this court made a distinction between highly suggestive marks and descriptive marks, noting that those really are very weak marks entitled to very narrow scopes of protection. So on the realm of distinctiveness, highly suggestive is here and slightly suggestive is here. So conceptually, our position is armor is a strong mark. And then with respect to marketplace, when you say a strong mark, do our cases say, is there anything that ever says slightly suggestive marks or strong marks? I mean, I'm kind of a little confused by that part. Yeah, so slightly suggestive is close to arbitrary. And on the realm of distinctiveness marks. Well, yeah, because there's generic, descriptive, suggestive, and arbitrary. That's correct. I mean, I got that order right. All right, so slightly suggestive would still be in the suggestive range. With no requirement of showing that there's acquired distinctiveness. If you have a descriptive mark, you have to show, in order to gain protection for that mark, that the mark has acquired distinctiveness through use. With a suggestive mark, you have to show that. I understand you don't have to, but how does that make it a strong mark? That's what I'm not understanding is I understand how it's registrable because it is slightly suggestive and not descriptive. Right. But I don't know why that translates into a fact finding that it is therefore a strong mark. Is there really great law out there that shows that the dividing line between strong mark, strong mark, I don't know what that descriptor means, strong. Right, right. A strong mark, to me, is certainly an arbitrary mark. It's a strong mark. And a generic mark is definitely not a strong mark. And a descriptive mark is not a strong mark. But I don't know what to make of the suggestive. Just because it's registrable, does that automatically make it a strong mark? I don't think it automatically makes it a strong mark. But the board's finding, based on the evidence here we have of record, with the dictionary definitions and the irrelevant third party registrations, shows that armor might be slightly suggestive for general articles of clothing. Might be slightly suggestive. So how does that make it? But what evidence is there that it's a strong mark? Because I don't think that just the fact that it could be slightly suggestive and not really, really suggestive makes it, it's like I strenuously object, Your Honor. But I don't know that I get that all the way to the strong mark. But that's enough to carry the water. There are no third party registrations for any armor marks, except ours and their evade offshore armor marks at this point. So that alone shows... For clothing. You need to qualify yourself. Because there's a lot of armor marks for things like paint and other things. That's right. That's right. For general articles of clothing, there are no armor marks. And what about the fact that they showed, I mean, they gave a list of at least 20 marks that have used the word armor. And in each case, it seems to be attempting to convey, with regard to the products it's used on, some notion of the strength or durability or whatever. I mean, when I think of armor, what comes to mind is it's going to protect me, right? It's going to be tougher than not wearing armor. So what about the fact that in all of the ones that they presented to us, where the word armor appears, for the various goods that they are being applied to, it is conveying a sense of strength or durability? Well, for those particular products, it may be conveying that particular notion. And that doesn't affect the strength of armor for clothing. I mean, you can look at Apple. And there are lots of... There are probably lots of Apple farms out there or products that are made from apples. But just because those exist, or there's an apple smell or scent for soap, doesn't impact the strength of Apple for computers. Well, but I guess his argument, as I understand it, is that the mark is not strong because it's conveying an aspect or a descriptor of the goods. Namely, these are strong goods. Especially when you're talking about athletic wear, which under armor is, you know, that these are strong strengths. I mean, that's sort of a characteristic. You know, I mean, they don't put wimpy little geeks up there in their commercials, right? No, that's right. Like, you know, they're trying to convey a brand image. And the word armor contributes to that. That armor does draw to mind. But it's not descriptive of the clothing. Like, you want the athletes, not the mathletes. But it's not descriptive of... It's best to have both if you have dollars. It's not descriptive of clothing. I mean, there's no finding here. There's no evidence of the record. None of the dictionary definitions. There are no third-party registrations that are relevant. He relies on registrations or abandoned applications, even, where armor is disclaimed. And one of them, it's a body armor mark. It was filed in 1998 with the disclaimer of body armor. And that was for athletic clothing. The application was never published. We don't have the benefit of anything that happened during prosecution of that application. It's possible that the applicant made a mistake and disclaimed body armor for athletic clothing. OK, but I don't want to... I feel like I've asked you so many questions. You haven't gotten to fully answer the very first one, which I really think I need an answer to, which is, so far, the only piece of evidence that you've pointed me to that is what ought to be part of a bundle to prove substantial evidence for a finding of strength is the fact that the board found it to be slightly suggestive. And I kind of don't exactly know how to weigh that. But luckily, I review that for substantial evidence. So I don't have to worry about it. But that standing alone cannot equate to strength marks because then every slightly suggestive mark would always be entitled to the DuPont factor. So tell me what your other pieces of evidence are that lead to the strength. So an absence of use in the clothing field. Right. That is one of ours. And the fact that Under Armour has done this extensive policing. So when consumers are out in the marketplace, based on this record, the only Armour mark that they encounter is Under Armour's mark. That's the only Armour mark that they're encountering in the marketplace. And here we have a lot of evidence of use, despite what he says. It's in the record. And it's in our briefs. We talked about it on pages 39 and 41 of our opening briefs. We have hang tags. And then on 5, 6, 8, 9, 10, 11, and 12 of our reply, we have additional examples of it. And in those examples, Armour's used in different ways. Armour's been registered since— And the board didn't make any fact findings on any of that. That's right. But there is evidence here. But we already talked about this earlier. I can't make a marketplace strength fact finding in the first instance. Right? I mean, didn't we discuss that and come to that conclusion that the board did not make a fact finding that Armour had any market strength at all? And you're pointing to me that there's evidence in the record upon which they could have, but they didn't. You can't ask me to do that in the first instance. That's true. The board did not point to any marketplace— Or make any fact findings relevant to it. They did not. But there is substantial evidence, and it's in the record here, of marketplace strength for Armour. Let's switch from the time we have left to the cross-appeal. Okay. And to tell us why you think—is the theory that despite the design elements in the mark that the board sustained, that there's still likely to be confusion? Yes, that is our argument. So the two cases, the standard character marks and then the design marks, and it's our argument that the board should have come out the same way on both of them. The only mark on this record that consumers are familiar with is the Armour mark. And Evade makes some arguments here. His opening, he said that Evade, they have a trademark registration. That registration is not of record in this case. He noted it in a footnote in his brief. But that registration is not of record. The only Armour registration that has any strength here, that has any use, is under Armour's Armour mark. And there's a lot of that. And when consumers are in the marketplace and they see the Evade stylized offshore Armour mark, they're going to remember the Armour portion because that's— Why? I'm looking at it. I can barely read the Armour portion. Could have something to do with this. But I can barely read. I mean, Evade is at least a hundred times larger than the words offshore Armour, which are like these tiny little minuscule letters underneath the word Evade. And they can only use it this way. They can't change the dimensions at all. They got a really narrow mark here in this stylized version. So why? Why would— What is your evidence? I mean, you didn't do a survey or anything. What is your evidence that people looking at this giant stylized word Evade with like lightning bolts coming out of the two E's is nonetheless going to focus on the tiny little less adorned— in fact, not at all adorned— word Armour underneath? Why? So that registration has no color claim at all. It's possible that the mark could be presented in a way that emphasizes Armour as opposed to the Evade. There's no question that Evade is the large part of that mark. But color could be emphasized. For example, you could have light gray where the Evade and the Offshore are, and then Armour could be in light red. And where's your evidence that that would cause people to then focus on the word Armour, and so much so that it would cause a likelihood of confusion? So in our evidence, Under Armour has dynamic marks. That's seen in the evidence. They use their marks in lots of different ways. And specifically on A853 of the appendix, it's a page from an Under Armour catalog. And this is just one example. There are other examples. There's UA Youth Boys. UA and Boys are in white in that presentation, and Youth is in white gray. The UAs and Boy, that language is emphasized in that particular presentation. And there are other presentations like that in our evidence. And in fact, Evade's specimen that they submitted during prosecution of their application is used in different colors. And that's on page 20 of their reply brief. But the evidence here shows that color can impact the presentation of a mark and what someone would remember from a mark. Well, that's the part. You say it could impact color. What evidence is there that it does, even with regard to your Under Armour mark, that it does, in fact, impact consumer impressions? You're just saying, you're saying it could, but that just sounds like a lot of attorney argument to me. Well, because I'm looking at the mark, and if the only standard is what I think could happen, there's no way that this could cause confusion because Armour is this tiny little unstylized thing. And the whole, the word Evade is all that jumps out at me. But the mark could be used in any color combination at all. And again, if it's light gray and then you have fire engine red, Armour is going to stick out in that presentation. That's going to be what consumers are going to remember. And again, based on this record, no one knows Evade. There is no evidence that anyone has ever heard of Evade, has ever purchased any Evade. There's nothing of evidence of record of that. There is evidence that Armour has been promoted extensively and for a really long time in the record. It's part of Under Armour's telephone number. There are Armour products all over its websites. Can I ask you, I don't understand why the board did not consider the extent to which Armour is famous in the context of the Under Armour mark. You proposed that and the board just said, no, we're just going to look at Armour by itself. Do you understand the rationale for that? Because I couldn't follow it. Based on their opinion, I think what they tried to do was take the mark that in their opinion was closest to the Evade marks and completely made a decision based on that. I think they thought it was easier. Again, I don't know what they were thinking, but I'm assuming they thought it was easier to base their decision on the Armour mark alone than Under Armour. But our position is that Under Armour has an extensive number of Armour marks. There are lots of them. And in this evidence, we have use of these Armour marks, Armour fleece, Armour block. I want to ask you another question because your time's about to run out. So I don't want to miss it. Similarity or dissimilarity of the marks. So really on the main appeal are only two issues. We explored strength. Similarity or dissimilarity is probably the most troubling one for me. The board's fact findings are pretty much non-existent. I can't understand the logic or rationale for how they concluded Evade offshore Armour is in sight, sound, and appearance the same thing as the word Armour standing alone. Sight, sound, and appearance. I get the likelihood of confusion conclusion. But on this one little sub-factor, I'm having a little trouble getting there. So tell me why I should nonetheless think that one factor. And by the way, even if that one factor goes in his favor, it doesn't mean there's no likelihood of confusion. I just want to be clear. I'm just having trouble with this one factor. So when you have a registered mark, a junior user can't come along and just add information or material to that registered mark and create a new mark and avoid confusion. Actually, the house mark cases. Well, that's true for confusion overall. Is that true for sight, sound, appearance, and meaning? Yes. Like for that sub-factor? Because I don't know. I mean, I just didn't get anything out of the board's opinion. In sound, Evade offshore Armour. Armour. Like, I mean, they sound really different to me. Those sounds, this isn't like most of the sound cases we get. It's words that actually do sound alike. And it's usually like the same number of syllables or close, you know, same number of words. You get my point. Both of the marks have Armour in them. And we have a whole series of Armour marks. We use Armour. But those aren't the ones that the board used for likelihood of confusion analysis. So I think you're absolutely right. You actually have that catalog that doesn't just say Armour. It says Outdoor right across the middle, right? If that had been what they used, that would be different. Then sight, sound, and appearance hold Outdoor Armour and Evade Outdoor Armour getting a lot, lot, lot closer. But for just Armour, you can't talk about the other uses of the word Armour because those aren't the ones that the board found sight, sound, and meaning to be the same. So with respect to Armour and Evade Offshore Armour, the marks do sound alike. You have to consider that Armour is in both marks. And even if you add something to the mark, that doesn't mean that the marks don't sound alike. That's the trademark law. And adding a housemark is looked at when you determine the similarity and the dissimilarity of a mark. And when you have a mark that's not descriptive like... When you say adding a housemark to make sure I understand you, you mean like the word Evade. Evade is their housemark. Yeah, it's an alleged housemark. Oh, it's not. The board talks about it being a housemark. Again, there's no evidence here of any use of Evade. So we call it an alleged housemark because we don't know that it is a housemark and no one knows Evade. On this record, no one knows Evade, the company, or the goods at all. In the cases about housemarks, the two that they've relied on, they're actually quite different. Kitty was one of the registered marks for cat food. That was a descriptive term. So adding a housemark to a descriptive term probably doesn't result in likelihood of confusion. And in the second case, the applicant didn't take the entirety of the registrant's mark. It took a portion of the registrant's mark. And so therefore, the marks were different in sound, sight, and meaning. But here, we don't have that. They've taken all of our armor mark and added material to it, added a housemark to it that does not distinguish it from our armor mark. Okay, let's hear from the other side. We'll save you some time on the cross-appeal. Okay, Mr. Welsh. I just wanted to make one point. Under Armour continues to say that there's no proof that Evade uses its marks. That's absolutely untrue because one, there are two registrations which are based on use. There's specimens in the file. The section seven of the act says the registration is prima facie evidence that the marks are valid, owned by the registrant, and in use. Their own evidence includes Evade's interrogatory answers where it says it uses the marks and it states where it advertised the mark. So for Under Armour to continue to say that this mark is in use is just nonsense. And secondly, to say that no one knows about the word Evade, that's a red herring. That's not the question here. It's not up to Evade to prove that its mark is well-known. It's up to Under Armour to prove likelihood of confusion, and they haven't proven it. You have to take the word as it is that's applied for and decide whether it's confusable or not. You don't turn the table on the applicant or the registrant and say, okay, you prove your mark is strong. That's not the way it works. That's all I have. Okay, thank you. Do you need the last word, Ms. Lindquist? Just on the cross appeal. Yes, yes. You can turn around and sit back down if you change your mind. Okay. You look like you kind of want to. Because he really didn't say much. No, you're exactly right. I mean, our position is that Evade here on this record, it's the type of mark that Under Armour would use with its armour marks. We have lots of armour formative marks. Evade is the type of mark that we would use to armour. It's conceivable and possible and likely that a consumer would think that Evade Offshore Armour was an Under Armour product under its armour marks. And there's lots of co-branding between different companies. It happens all of the time. Disney is a company that partners with lots of people. And in fact, every 10-year-old knows that Disney today owns the rights to make Star Wars films. It's not unlikely. We think it's likely that Evade Offshore Armour would be thought to be an armour product from Under Armour. Okay. Thank you. Thank you both. The case is taken under submission. That concludes the argued cases for this morning.